UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

    DONG HUN KWAG,                                              Case No. 06-32191-dof
                                                                      Chapter 7
                Debtor.                                 Hon. Daniel S. Opperman
_____/

COVENTRY COMMONS, LLC,

    Plaintiff,

v.                                                                                         Adv. Pro. No. 07-3002

DONG HUN KWAG,

    Defendant.
_____/

## **OPINION REGARDING PLAINTIFF'S OBJECTION TO DISCHARGE**

        Coventry Commons, LLC, the largest single creditor in debtor Dong Hun Kwag's bankruptcy case, filed this complaint objecting to discharge under 11 U.S.C. § 727(a)(2), (a)(3), (a)(4), (a)(5) and § 523(a)(6).[1] A trial was conducted on January 28 and 29, 2008. The parties submitted post-trial briefs in lieu of closing arguments, and the Court took the matter under advisement. The Court reviewed all of the testimony and exhibits admitted into evidence. The Court concludes that the Debtor failed to keep adequate records from which his financial condition can be ascertained and that the Debtor has failed to explain the loss of assets or the deficiency of assets to meet the Debtor's liabilities. Accordingly, Debtor's discharge must be denied under Section 727(a)(3) and (a)(5).[2]

---

[1] Prior to trial, Plaintiff determined that it would pursue only the Section 727 counts and not the Section 523(a)(6) claim.

[2] In light of the Court's denial of Debtor's discharge under Section 727(a)(3) and (a)(5), it is unnecessary to address the remaining claims and they will be dismissed without prejudice.

-1-

## Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a).

This is a core proceeding under § 157(b)(2)(J).

## Facts

Since immigrating to the United States approximately eighteen years ago, Debtor has worked and owned businesses in the dry cleaning industry. He has been active in the Korean Dry Cleaners Association and at one time served as the Association's director. Currently, Debtor and his wife own and operate Dry Clean Company, Inc.

Dry Clean Company, Inc. is located in Davison, Michigan. In addition to dry cleaning and alterations, it offers customers the use of coin operated laundry machines. The business is operated in a storefront leased from Davison Creek, LLC, an entity also owned by Debtor and his wife.

Debtor and his wife are Dry Clean Company, Inc.'s only employees. Debtor testified that as an S-corporation, he considers the business entity to be separate and distinct from himself. Despite this belief, he regularly uses the entity's bank account for personal expenses. Among other personal expenses, Debtor has used the account for food, home mortgage payments, entertainment expenses, and fees for his initial bankruptcy counsel.[3] Since Debtor has not had a personal bank account since 2001, all of his banking is necessarily conducted through bank accounts belonging to his wife, Dry Clean Company, Inc., or Davison Creek, LLC.

For his businesses, Debtor utilizes what his trial and post-trial briefs describe as a "very simple, maintenance free accounting procedure that accurately captures all incoming funds and expenditures." (Dkt. # 71, p. 4; Dkt. # 80, p. 4). This procedure involves depositing all revenues into the business bank account, paying the business expenses from the account, and using the remaining funds for personal expenses. Debtor calculates Dry Clean Company, Inc.'s revenues based on the total bank deposits for a given period. Operating expenses are calculated by totaling the business related draws against the account over the same period.

Information derived from this procedure was used by Debtor's accountant to prepare year 2005 financial statements, including a balance sheet and income statement for both businesses. The tax returns for the businesses, as well as those of the Debtor and his wife, were similarly

---

[3] Debtor has similarly used the Davison Creek, LLC bank account for personal expenses.

based upon these calculations. Debtor's Statement of Financial Affairs reports that he and his spouse earned a total of approximately $33,000.00 in 2005, and $35,000.00 in 2004.[4] The joint tax returns recite similar figures.

Dry Clean Company, Inc. uses a cash register system capable of producing summary reports. Prior to trial, Debtor caused summary reports to be generated for monthly periods from 2005 forward.[5] For January 1 through December 31, 2005, the cash register summary indicates that Dry Clean Company, Inc. had revenues of $199,950.22. The summary, in its entirety, reads as follows:

```
** Summary Report **
Number of Invoice        : 9385

Dry Piece                : 33661
L-Shirt Piece            : 20609
Laundry etc. Piece       : 155
Alt. Only Piece          : 253
-------------------------------------------------
Total Piece Count        : 54878
Mixed Alt. Piece         : 312

Deposit Amount           : 1543.85
Dry Clean Total          : 131815.32
L-Shirt Total            : 30961.80
Laundry etc. Total       : 1117.75
Alteration Total         : 4909.65
-------------------------------------------------
Total Cash Out Amt       : 199950.22


*** In the drawer ***

Cash                     : 112248.62
Check                    : 35284.14
Credit Card              : 52342.46
Charge                   : 91.50
-------------------------------------------------
Total Amount             : 199966.72
```

---

[4] During either 2004 or 2005, Debtor made contributions to the Great Love Presbyterian Church totaling $10,500.00. The contribution statement is entitled "2005 Contribution Statement"; it is signed and dated 03/07/2006; but states that it covers the period from 01/01/2004 to 12/31/2004.

[5] Apparently, Debtor's accountant did not enjoy the benefit of such reports when preparing the financial statements and tax returns.

It is not clear why the total cash out amount of $199,950.22 does not reconcile with the sum of the preceding revenue sub-categories, which total $170,348.37.  A possible source of the remaining revenue is the coin operated laundry machines, which are not broken out as a revenue category in the summary report.  Given the proximity of the $199,950.22 revenue total to the drawer total of $199,966.72, and the fact that neither party disputes the accuracy of the $199,950.22 revenue figure, there is no reason to doubt that it is a reliable representation of revenues processed through the cash register.

For calendar year 2005, Dry Clean Company, Inc.'s Income Statement recites total revenues of $165,551.32.   This figure was arrived at by totaling Dry Clean Company, Inc.'s bank deposits.  When questioned during the trial concerning the discrepancy between the income statement revenue figure and the cash register summary revenue figure, Debtor indicated that he believed the cash register summary was the more accurate of the two.  When asked what happened to the resulting difference of $34,398.90, Debtor testified that he deposited everything he had in the bank account.  He was unable to explain what happened to the missing funds or why the records he maintained failed to reveal its disposition.

Plaintiff points to Dry Clean Company, Inc. revenue as representative of, among other things, the inaccuracy and resulting insufficiency of Debtor's records for the purpose of ascertaining his financial condition.  During the course of his bankruptcy, Debtor supplied the following records to Plaintiff for the purpose of ascertaining his financial condition:

> (i) the Chapter 7 Trustee's Report of No Distribution;
> (ii) the Bankruptcy Schedules and SOFA;
> (iii) personal joint tax returns;
> (iv) business tax returns;
> (v) Mrs. Kwag's bank statements;
> (vi) Mrs. Kwag's W-2;
> (vii) a charitable contribution statement;
> (viii) leases for tenants at Davison Creek, LLC;
> (ix) Dry Clean Company, Inc. cash register receipts;
> (x) financial statements for Davison Creek, LLC and Dry Clean Company, Inc.; and
> (xi) bank statements for the business bank accounts.

Debtor asserts that these are adequate to ascertain his financial condition.  Plaintiff disagrees.

<u>Discussion</u>

Under Section 727(a), a debtor will be denied a discharge if:

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

. . .

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

11 U.S.C. § 727(a)(3) and (5).

"Section 727(a)(3) requires as a precondition to discharge that debtors produce records which provide creditors 'with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present.'" *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996) (quoting *In re Martin*, 141 B.R. 986, 995 (Bankr. N.D. Ill. 1992)). The purpose of the statute is "to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs." *Peterson v. Scott (In re Scott)*, 172 F.3d 959, 969 (7th Cir. 1999) (quoting *Cox v. Lansdowne (In re Cox)*, 904 F.2d 1399, 1401 (9th Cir. 1990) (quoting *In re Underhill*, 82 F.2d 258, 260 (2d Cir. 1938))). "The debtor has the duty to maintain and retain comprehensible records." *In re Juzwiak*, 89 F.3d at 429.

For an objection under Section 727(a)(3) to be sustained, the evidence must show that: (1) the debtor failed to keep or preserve adequate records; and (2) as a result, it is impossible to ascertain debtor's financial condition and material business transactions. *See Solomon v. Barman (In re Barman)*, 244 B.R. 896, 900 (Bankr. E.D. Mich. 2000); *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3d Cir. 1992) ("The test is whether 'there [is] available written evidence made and preserved from which the present financial condition of the bankrupt, and his business transactions for a reasonable period in the past may be ascertained.'"). Taking into account considerations such as the debtor's occupation, background, education, and sophistication, the

adequacy of records must be determined on a case by case basis. *Turoczy Bonding Co. v. Strbac (In re Strbac)*, 235 B.R. 880, 882 (B.A.P. 6th Cir. 1999).

The objecting party has the burden of proving that the debtor's records are inadequate. Fed.R.Bankr.P. 4005. *In re Barman*, 244 B.R. at 900 (citing *In re Strbac*, 235 B.R. at 882). "The elements of a violation of 11 U.S.C. § 727 must be proven by a preponderance of the evidence to merit denial of discharge." *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000)(citing *Barclays/American Bus. Credit, Inc. v. Adams (In re Adams)*, 31 F.3d 389, 394 (6th Cir. 1994). The moving party does not need to show an intent to defraud in order to establish a Section 727(a)(3) violation, *In re Juzwiak*, 89 F.3d at 430, but only that debtor has failed to provide adequate records without justification. If the objecting party establishes that the debtor's records are inadequate, the burden shifts to the debtor to justify the inadequacy. *In re Barman*, 244 B.R. at 900.

In this matter, Debtor maintains that the various documents and records he has produced enable the Plaintiff to ascertain his financial condition. Regarding Dry Clean Company, Inc., he states in his trial brief:

> Mr. Kwag [has] developed a very simple, maintenance free accounting procedure that accurately captures all incoming funds and expenditures. Mr. Kwag deposits the incoming funds into a business account, pays business expenses and utilizes the remainder to fund his and his wife's personal needs. The equation for ascertaining Mr. Kwag's income is simple enough that it could be solved by a nine year old, and certainly can be easily interpreted by the sophisticated Plaintiff here. Plaintiff just simply wishes to argue that the calculation does not bear an accurate amount, as they apparently attempt to argue that Mr. Kwag does not deposit his funds as he says he does. Other than the bear [*sic*] assertion, there exists no evidence of this vicious charge.

(Dkt. # 71, p. 4). The evidence at trial showed the above statement to be incorrect in several important respects.

The cash register summary reports raise serious doubts concerning the accuracy of the records maintained and provided by the Debtor. By showing a revenue number roughly $35,000.00 in excess of the figure appearing in the year 2005 financial statements and tax returns, the accuracy of these latter documents is extremely suspect. Debtor's testimony that the

-6-

cash register summaries provide the more accurate revenue figure leads to the conclusion that the financial statements and tax returns are materially inaccurate or contain material inaccuracies.

Contrary to Debtor's contentions, the evidence showed that, as employed, his accounting procedures were neither simple or accurate. The inaccuracies were not insignificant, but material. Dry Clean Company, Inc.'s 2005 Income Statement shows a loss of $8,316.72 on revenue of $165,551.32. Assuming that all figures other than the revenue number are accurate, the business actually would have earned a profit of $26,082.18 for the one-year period. This assumption however, illustrates the larger problem here: the evidence shows that Debtor's financial statements and tax returns are inaccurate, but fails to demonstrate what the accurate figures are. This makes it impossible for Plaintiff or the Court to ascertain with any precision what Debtor's true financial condition is.

Plaintiff met its burden to show that Debtor's records are not adequate. This shifted the burden to Debtor to justify the inadequacy.

Debtor presented minimal and unconvincing justification for his inadequate record keeping practices. Although he utilized the services of an accountant, in light of the cash register reports, it is apparent that (whether intentional or not) he provided this professional with seriously inaccurate information. As a result, the financial statements and tax returns produced by the accountant suffer from the same inaccuracy inherent in those records on which they are based. Debtor's belief that other dry cleaners use an "accounting practice" similar to his own is no justification for the lack of adequate records. If for no other reason, the practice appears to have caused Debtor to significantly underreport his income to taxing authorities.

The Court has also considered the possibility that the Debtor has maintained adequate records consistent with the mandate of 11 U.S.C. § 727(a)(3). Even assuming the Debtor has complied with 11 U.S.C. § 727(a)(3), the Debtor then faces difficulty as to the Plaintiff's claims under 11 U.S.C. § 727(a)(5). The Debtor cannot explain the loss of assets or the deficiency of assets to meet the Debtor's liabilities. In particular, the Debtor's records lack any detail of the loss of substantial cash and revenue.

11 U.S.C. § 727(a)(5) provides that the court shall grant the debtor a discharge unless "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." The

purpose of this section was explained by the court in *In re McVay*, 363 B.R. 824 (N.D. Ohio 2006):

> This section is derived from competing concerns: (1) the trustee and creditors' right to question the debtor about their financial affairs; and (2) the knowledge that debtors will not always be completely forthcoming with information about their financial activities. Section 727(a)(5) seeks to address these competing concerns by conditioning discharge on a debtor satisfactorily explaining any prepetition diminution or loss of asset. In order to achieve this, paragraph (a)(5) requires debtors to disclose all vital information; there is no requirement of mal-intent or scienter. In addition, it does not matter under § 727(a)(5) how the loss or deficiency occurred. For example, money spent on illegal activities does not run afoul of § 727(a)(5). Section 727(a)(5) is simply concerned with the adequacy of the debtor's explanation.

*Id.*, at 830-831 (citations omitted).

To satisfy its initial burden of proof, the Plaintiff must show two things: first, that the debtor had a cognizable ownership interest in a specific asset, and second, that the debtor's interest existed at a time not too far removed from when the petition was filed. *Id*. Once the Plaintiff has met its burden, the debtor must satisfactorily explain the loss. The standard for a satisfactory explanation under § 727(a)(5) "is one that is reasonable under the circumstances." *Id*. at 831 (quoting *Lacy Wholesale & Main Factors v. Bell (In re Bell)*, 156 B.R. 604, 605 (Bankr. E.D. Ark. 1993). A reasonable explanation involves capacity for verification and the ability of a creditor or trustee to investigate the circumstances of the loss.

The Debtor's records indicate missing funds within a short time of the filing of the Debtor's petition for relief. The Court finds that the Plaintiff has met its burden of proof as to the elements of 11 U.S.C. § 727(a)(5). After review of the records, as well as the Debtor's testimony and other evidence offered by the Debtor, the Court finds that the Debtor has not satisfactorily explained this loss. All explanations given by the Debtor, or on the Debtor's behalf, simply are not credible in light of the nature of the Debtor's business and personal enterprises.

In the instant case, the Debtor's records are either inconsistent or demonstrate an undocumented loss or use of money. In short, either the Debtor failed to maintain adequate records consistent with 11 U.S.C. § 727(a)(3), or those records leave unanswered questions

-8-

regarding the Debtor's assets contrary to the requirements of 11 U.S.C. § 727(a)(5). Under either scenario, the Debtor's discharge must be denied.

## Conclusion

The Court is particularly mindful that "[t]he reasons for denying a discharge to a bankrupt must be real and substantial, not merely technical and conjectural." *Stevenson v Cutler (In re Cutler)*, 291 B.R. 718, 727 (Bankr. E.D. Mich. 2003) (quoting *Schreiber v. Emerson (In re Emerson)*, 244 B.R. 1, 19 (Bankr. D.N.H. 1999) (internal citations omitted)). However, the facts of this matter reveal very concrete and substantial reasons to deny discharge. The documents Debtor provided raise significant questions, while affording few, if any, answers. These records are not adequate for Plaintiff to ascertain Debtor's financial condition. Debtor's testimony and the cash register summary reports establish the inescapable conclusion that, at best, the 2005 financial statements are materially inaccurate. Moreover, these records leave unanswered questions as to the loss of the Debtor's assets. Therefore, Plaintiff's objection to discharge is sustained under 11 U.S.C. §§ 727(a)(3) and 727(a)(5).

The Court will enter an order consistent with this Opinion.

**Signed on September 17, 2008**

                                              **/s/ Daniel S. Opperman**
                                        **Daniel S. Opperman**
                                        **United States Bankruptcy Judge**